Argued and submitted November 1, 1989, the decision of the Court of Appeals affirmed and the judgment of the circuit court reversed January 25, reconsideration denied March 6, 1990

## VIERRA et al,
*Respondents on Review,*

*v.*

## CLACKAMAS COUNTY,
*Defendant,*

*and*

## PORTLAND GENERAL ELECTRIC,
*Petitioner on Review.*

(CC 86-10-145; CA A47423; SC S36288)

785 P2d 757

Ann L. Fisher, Portland, argued the cause for petitioner on review. On the petition for review were Douglass M. Hamilton and S. Bradley Van Cleve, Portland.

Kelly Michael Doyle, Portland, argued the cause and filed the response to the petition for respondents on review.

JONES, J.

Van Hoomissen, J., filed a dissenting opinion.

## JONES, J.

Defendant Portland General Electric Company (PGE) petitions this court to reverse the Court of Appeals' decision that PGE is not a "pesticide operator" as defined in ORS 634.006(13). The Court of Appeals reversed a summary judgment in favor of PGE. *Vierra v. Clackamas County,* 96 Or App 196, 772 P2d 1346 (1989). We affirm the decision of the Court of Appeals.

Plaintiffs brought this action to recover damages for personal injury and property damage that allegedly resulted from the escape onto their property of a pesticide that employes of PGE were spraying in the right-of-way on a public road as part of a "wire maintenance program." The right-of-way was not PGE property.

The trial court concluded that PGE is a "pesticide operator," as defined in ORS 634.006(13), and that plaintiffs were therefore required to, and did not, comply with the "report of loss" requirements of ORS 634.172 that are a prerequisite to bringing an action against a pesticide operator.[1] ORS 634.006(13) provides:

> " 'Pesticide operator' means a person who owns or operates a business engaged in the application of pesticides upon the land or property of another."

The right-of-way in this case is "the land or property of another."

The Court of Appeals interpreted the phrase "a business engaged in the application of pesticides upon the land or property of another" to mean that "that *is* the person's business, rather than something as incidental as routine equipment maintenance." 96 Or App at 201, 772 P2d at 1348 (emphasis in original). Thus, the Court of Appeals concluded

---

[1] ORS 634.172(1) provides:

"No action against a pesticide operator, arising out of the use or application of any pesticide, shall be commenced unless the claimant has filed a report of the loss with the department, and mailed or personally delivered a true copy of such report of loss to the pesticide operator allegedly responsible and a true copy of such report to the person for whom such work was done, if other than the claimant, within 60 days from the occurrence of such loss or within 60 days from the date when the claimant discovered that such loss had occurred. If the damage is alleged to have been caused to growing crops, the report shall be filed prior to the time when 50 percent of the crop is harvested."

that PGE is not a "pesticide operator" and that the trial court erroneously granted summary judgment.

Standing alone, the definition of a "pesticide operator" under ORS 634.006(13) allows different interpretations. It could be read to say that one who is engaged in a business, any business, and applies pesticides on someone else's land or property, escapes liability for injuring others unless the injured party files timely proof of loss with the department. Or the statute could be interpreted to apply to a business only if applying pesticides to the land of another is part of the "business" in which the defendant is "engaged."

The Court of Appeals, in interpreting ORS 634.006(13), seemed to require that pesticide application must be a defendant's main or principal business before the statute applies. ORS chapter 634 uses the terms "main or principal business" in other contexts. For instance, ORS 634.106(5) exempts from the statute "[p]ersons who do not advertise or publicly hold themselves out as being in the business of applying pesticides but whose *main or principal work or business* is the maintenance of small or home lawns, shrubs or gardens" and ORS 634.106(6) exempts "[p]ersons who do not advertise or publicly hold themselves out as being in the business of applying pesticides and whose *principal activity or business* as related to pesticides is selling pesticides or selling or leasing equipment." (Emphasis added.) The exemptions show that when the drafters of this expansive environmental legislation wished to distinguish between "principal" and secondary business activities, they said so.

However, the context of the exemptions in ORS 634.106(5) and (6) shows what kind of businesses would, but for the exemption, be covered by the act: those engaged in "the business of applying pesticides," although this is not their main or principal business and they do not advertise or hold themselves out to be in that business. The exemptions imply that someone who is not "in the business of applying pesticides" to the land of others even in a minor or secondary way (such as lawn maintenance or demonstrating pesticides or equipment) is not covered at all.

■ The rest of the statute bears out that "pesticide operator" refers to a type of business, not to the application of pesticides in pursuing some wholly unrelated business such as

transmitting and selling electrical energy. A license as a "pesticide operator," which is the object of the definition, authorizes the licensee "to engage in one or more of the classes of pest control or pesticide application *business* prescribed by the department under ORS 634.306(2)." ORS 634.116(1) (emphasis added.)[2] The operator's license is needed to engage in the "pesticide application business," not in "pesticide application."

We conclude that commercial pesticide application must at least be a part, no matter how small, of the business in which the defendant is "engaged." One engages in the business of applying pesticides to the land or property of another if part of the earnings of one's business comes from that source.

■ There is no claim that PGE is in the pesticide business in this sense. It therefore is not a "pesticide operator" under ORS 634.006(13) and cannot invoke the requirements of the proof of loss requirement.

We affirm the decision of the Court of Appeals. The judgment of the circuit court is reversed.

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent.

ORS 634.006(13) provides:

" 'Pesticide operator' means a person who owns or operates a business engaged in the application of pesticides upon the land or property of another."

The issue in this case is whether PGE is a "pesticide operator" within the meaning of ORS 634.006(13). I agree with the trial court that on these facts PGE is a "pesticide operator." Therefore, I would reverse the Court of Appeals' decision and affirm the trial court's judgment.

I read ORS 634.006(13) in conjunction with other statutes in the State Pesticide Control Act (Act), ORS ch 634, to encompass persons engaged in *any* business who apply pesticides on the land or property of another. Nothing in the

---

[2] Under ORS 634.306(2), the department establishes classifications of "the various pest control or pesticide application *businesses* in order to facilitate the licensing" of, among other things, pesticide operators. (Emphasis added.)

plain language of the statute requires that pesticide application must be a direct source of business income for the statutory definition to apply. The majority's conclusion that the definition will encompass a pesticide user, if, and only if, a part of the user's earnings, however small, derive from pesticide application makes no sense, especially where, as here, a major pesticide user like PGE is excluded solely because it realizes no direct earning from pesticide application.

PGE is a public utility. ORS 634.116(12)[1] specifically provides that public utilities shall not be required to obtain a license as a pesticide operator while applying pesticides to land or property under their ownership, supervision, control or jurisdiction. This exemption from the license requirement covers pesticide applications not only on a public utility's *own* land but also on non-owned lands of others that are only under a public utility's "supervision, control or jurisdiction."

The majority fails to explain why the legislature would feel it necessary to exempt public utilities from the pesticide operator licensing requirement if public utilities are not included in the statutory definition of pesticide operators. This express statutory exemption implies that public utilities that apply pesticides to the land of another are "pesticide operators" for purposes of the Act.

The legislature made other express exemptions from the licensing and certification requirements of the Act. It exempted "[p]ersons who do not advertise or publicly hold themselves out as being in the business of applying pesticides but whose main or principal work or business is the maintenance of small or home lawns, shrubs or gardens." ORS 634.106(5). The legislature also exempted "[p]ersons who do not advertise or publicly hold themselves out as being in the business of applying pesticides and whose principal activity or business as related to pesticides is selling pesticides or selling or leasing equipment." ORS 634.106(6).

---

[1] ORS 634.116(12) provides in part:

"[P]ublic utilities * * * shall not be required to obtain a license as a pesticide operator or to furnish evidence of financial responsibility to the department, while applying pesticides to land or property under their ownership, supervision, control or jurisdiction."

The foregoing statutory exemptions establish that the legislature knew how to exempt persons from the Act's coverage. The express exemptions support the conclusion that the legislature would have used similar language had it wished to restrict the Act's coverage to businesses whose earnings come "at least in part, no matter how small" from pesticide application.

The Act is a *pesticide control* scheme.[2] It is improbable that the legislature intended to exclude major users of pesticides like PGE merely because their earnings do not come directly from pesticide application on the land or property of another.

---

[2] To illustrate my point: Suppose that Joe Smith, dba Smith & Sons, Co., receives 5 percent of his annual gross income from pesticide application and that Smith uses 10 55-gallon drums of pesticide during the year. Suppose further that PGE, one of Oregon's major public utilities, uses 10,000 55-gallon drums of pesticide during the year to control grass and brush along its right-of-ways. Under the majority opinion, Smith is covered by the act, but PGE is not. I do not believe that is what the legislature intended.